Page number 13-845. Dr. Krutko v. Franklin County Ohio et al. President-contractee, Ms. Versailles. Good morning. May it please the court, I would like to reserve five minutes for rebuttal, please. You may. For the purposes of this appeal only, appellants are not disputing and are accepting as true the factual allegations that Appley made against them. Those factual allegations are found in paragraphs 26 and 29 of Appley's second amended complaint. Specifically, those allegations are that the appellants laughed at Appley after the toilet overflowed in his cell and that appellants did not remove Appley from his cell for 25 minutes after the toilet had overflowed. So, the neat abstract issue of law for this court is whether accepting those facts as true, Appley has demonstrated a violation of a clearly established constitutional right. Well, it's not just the 25 minutes, it's the several days that these deputies didn't allow him to shower or clean up. Well, and we would respectfully submit that that allegation was not made against these named deputies, Your Honor. Looking at the second amended complaint, the only time these appellants are named in that second amended complaint are in paragraphs 26 and 29. I've already gone through those allegations. Other than that, the other people named in the complaint are all dismissed parties or just, quote, the guards. So, it's about the 25 minutes only with these your clients. And the laughing. And the laughing. That is our contention. I think the problem of that characterization and I certainly understand why you would say that, is while it's true that in the paragraphs in the amended complaint that refers specifically by name to the guards that seems clearly to implicate this 25 minutes. Then from then on, it talks about the guards, whoever they are. Now, how can we say whether the guards in the main parts of the complaint are these folks or somebody else? Which all seems to me to indicate why there needed to be an individualized inquiry here. Because the constitutional question has to be framed with, are you talking about what happened when the guy was in the so-called hole? Are you talking about the constitutional deprivation that arguably occurred while he was in the medical center? And we don't know where your people were, right? Well, I will say this, your honor. There's no allegation that the people, the named appellants left in this suit were ever in the medical center. When you look at the amended... You're just assuming that whenever he says the guards, that couldn't mean these four or five or whatever the number is. So why do we assume that? Well, I am basing that assumption on the fact that in his second amended complaint, when he wants to name who the guards are, he does in capital letters. He sets the guards, including, and he names the guards that are still left in this lawsuit. Why is it reasonable then to read therefrom each time he uses the term the guards? It's... He means to include the named individuals. And I guess I would think that was true if, you know, for instance in a pleading when you name everyone and then you say here and after, you know, I'm going to refer to them as the guards. And I understand that. In this case though, when you look at the second amended complaint, you know, the first time he mentions these appellants by name is in paragraph 26. Then he says, you know, he has allegations in paragraph 27, allegations in paragraph 28, and then it's not again until paragraph 29 where he specifically refers to them again. When we get to the medical center, they're not referred to at all. The only defendant that's named... That's specifically named in response to anything that happened in the medical center is Doug Hahn. He's been dismissed out. I would also note that in Appley's affidavit... Paragraphs 31, 33, and 34 all refer to the guards. Oh, right. Before we waste your whole 15 minutes on this, let's assume that your clients are at risk at this stage, both with respect to the 25 minutes and the, we'll call it the two or three days in the medical center until we get that sorted out. So I understand your argument that what... Accepting is true what this guy says happened during that 25 minutes. You say, I gather then, that was not a constitutional violation, or if it was, it wasn't clearly established. I.e., laughing, taunting, refusing to remove them for 25 minutes. Yes, Your Honor. Is that right? Yes, you have it exactly right. So let's assume now that your guys are still at play in connection with 31, 33, and 34 for a moment. Are you contending that if true, leaving somebody covered in excrement and not allowing them a shower for two or three days is not a constitutional violation? Are you taking that position? Well... I... I have to admit I maybe was not exactly prepared to take a position either way on that because I did not consider those to be allegations against the appellants in this case. Can you see how the court would need to address that? Yes, Your Honor. Thank you. And I guess what I would say is that I'm not sure. Because based on the cases that I've referred you to in my brief regarding looking at conditions of confinement claims when they're based on unsanitary conditions, it is the length of time that is not controlling, but it's something that you really look to. And then I guess the question would become, if for two or three days, the only thing I think at some point he does say he got to change his smock, but that he still had excrement otherwise on his body and was not able to shower. And then I guess looking at that, is that enough for two or three days after that if he did not get to shower and that is considered to be the fault of appellants herein? All right. You don't know the answer really to that one because you didn't view it that way. So that's fair enough. So let's go back to what you are construing happened where your clients are actually named. So it's a little more sophisticated or complicated than the way you phrased it, I think. And let me tell you why. And then you react to this. The first action, as I would see it, that they're complaining about is that this sewage is coming into the cell and he and his cellmates cry out and guards come to the door. Secondly, when they're at the door, they curse or yell at him or something like that. So that's an action, an alleged action that may or may not violate a constitutional right. Then the third is apparently they actually moved him out of that cell. So he's not in the cell filled with excrement for the whole 25 minutes as I read this. I think they move him into another cell. So we have to look at whatever they did or failed to do when they were in the other cell before they get sent to the medical center. We have to analyze that, don't we? Paragraph 31. He was then transferred to another cell in the same area. So that's still your guys. They're not referred to specifically by name, but we can assume that your guys did, they were involved in everything that happened in the whole area, in the area of, quote, the whole, end quote. Right? If that's what the court wants to do. I'm not. It's not what I want to do. I'm just trying to read the complaint. See, he says in 31 that he's mad about being stuck in that other cell. We'll call it a holding cell for a little bit because it contained the foul odor. So he says they treat him one way when he's in the cell with the overflowing toilet. They transfer him in another cell. He's mad about what they did or failed to do when he was in that cell. Then they ship him off to the medical center and he complains about that. But you're not prepared to talk about that. So we have to look to whether there's a constitutional violation when he's in the cell with the overflowing toilet, and we have to look at what they did or failed to do when he's in the holding cell, don't we? My problem, I guess, in trying to address this is the lack of allegations regarding personal involvement of these appellants. I mean, again, as I read the amended complaint, and then even his cousin, there's two paragraphs where he names them, and then I know that he says the guards. But I guess my question would be different people can do different things. Obviously, we're willing to accept that when he named them as having actually done an action that they did it. Here's my point. How can we rule for or against your client on constitutional violation clearly established until we, or probably more appropriately, the district judge figures out exactly what each individual was alleged to have done at what point in time? Once we figure out that, then doesn't, don't the two legal questions for qualified immunity flow from that? I think that if we don't dispute what is alleged that the appellants have done, then no, that this court can address that issue. So you don't dispute that your guys put him in another, that let him stay in filth for 25 minutes. You don't dispute that? No, I don't dispute that. In the cell with the overflowing toilet? With the overflowing toilet that they left him in there for 25 minutes. We do not dispute that. Okay. Then they put him in another cell, and they deny him clean clothes or a shower. Well, no, they... You don't dispute that? They gave him a new smock. That's alleged in the complaint. But I don't know if, you know, the appellants did that or someone else did that. That's my whole point. How do we know whether your guys are liable? Do we know what they did or didn't do? Or where it's not sufficiently alleged in the complaint to be able to figure that out, isn't that why you do an individualized inquiry? Well, I guess I'm not sure that the burden is on us to sort out Appley's complaint, his second amended complaint in this instance. So he writes a crummy complaint so you win? Is that basically it on the standard we apply here? Well, he also did an affidavit. And in that affidavit, he also doesn't name the appellants. He only names Doug Hahn. And he says that he specifically remembers begging Doug Hahn for a shower. But he doesn't mention anyone else. And Doug Hahn is no longer in this lawsuit. Good. Oh, I'm past time. Thank you. Thank you. May it please the court. My name is Maxwell Kinman, and I represent the plaintiff appellee, Robert Krutko, in this matter. The appellant is basically raising two arguments. Number one, that there should be qualified immunity because a constitutional right was violated. And then secondly, that even if a constitutional right was violated, that the reasonable deputies in their position would not know that they had violated the appellee's rights. Why should this court, counsel, be parsing the complaint, the amended complaint, where it and the affidavit neglect to name the particular defendants in other than one or two instances, which we could maybe say the 25 minutes plus the holding cell? Why should we read it the way I think you're asking us to do, is tack on the four or five or however many additional days with respect to the particular named non-settling, I take it the other's settled, defendants? Yes, Your Honor. In this matter, there's five sets of defendants. There's the guards, there's the medical staff, which is Douglas... Let's just limit the ones who we care about today. Those are just the guards. Thank you. So when guards is mentioned... They're the only ones left, and you didn't cross-appeal the denial of all the rest of them. Exactly right. So we're just down to the guards. That's right. Three things happen. What the guards allegedly did in the hole, what they did in the hole, and what somebody did in the medical center. Now, are you suing... You can make this a lot easier for us. Are you claiming a cause of action against these five guys, or women, I don't know what their sex is, for what happened in the medical center? Yes, Your Honor. It would be for all three parts. Now, they... Douglas Hahn is now no longer in this case. Is it fair for this court to believe that you meant all these when your complaint didn't clarify that? I believe it is, because when the complaint mentions guards, these are the guards that are mentioned. No other guards here have been dismissed from the complaint. But would you agree that whether there was a constitutional violation for not removing this guy quickly enough from the cell with overflowing sewage is an arguably different claim, or a claim with a different constitutional dimension, to leaving them in the medical center for three to five days without the opportunity to take a shower? I believe these are all individual parts to address here based on the law, but I think it is one... So how do we address the constitutional claim against these individuals for what happened in the medical center when, one, you don't identify these guys even having been in the medical center, and two, there seems to be at least reasonably persuasive evidence that you don't respond to that they either weren't on duty that day, they weren't in the medical center, not their job, whatever. These are not situations for which we normally let cases go to trial, because the whole purpose of immunity is that you don't have to stand trial. So back to... Shouldn't there have been an individualized inquiry to at least find out what you claim each individual guard did and when they did it and what they did or what they failed to do? I wish we could present the exact days, times, this is the exact hour when this exact guard was here. Unfortunately, in a case such as this, inside a jail, my client is not privy to that information, and neither is the appellants in this case. They simply just don't keep track of where these guards are minute by minute, hour to hour. But your guy doesn't even say in the complaint or in his affidavit that any of these five folks were actually ever even in the medical center. That's a different part of the jail, right? It's a different part of the jail, but the same guards operate and move the prisoners from the different... The medical center staff, Douglas Hahn in this matter, he's, for all intents and purposes, the doctor there in the jail. So when my client's having complaints to him, that's a separate cause of action, that's a separate complaint. So is your guy going to testify that any of these five were actually in the medical center? I believe so, your honor. But he didn't say that in the complaint, he doesn't say that in his affidavit. He mentions the guards and the basis of that part of the complaint for these guards is that no one there, no one in the entire jail, including these guards who had time with him from when the initial incident occurred, from the time they moved him to the second cell, and then from the time they put him into the medical department and transferred him around, during that entire period of time, none of them... He was not provided a shower, he was not provided the ability to if guard A's job is to guard people in the hole and the adjoining cell, and that guard doesn't work in the medical center, you don't have a claim under which he's then responsible for a failing of other guards in the medical center. You would concede that way. I would agree, and I think that would certainly cause us a problem at a trial. But here, where our allegations that these guards were there, and their allegations, they have not provided any evidence that guard A or guard B or guard C are specifically, here's their key cards, here's where they were at all points of time during the dates and times of this complaint, they can't provide that evidence either. So what we're left with is a he said versus he said situation, where my client... I understand there were six guards you sued, six individual guards, and three of them were female, right? Yes, Your Honor. I mean, presumptively those three female guards wouldn't even be in the cell of a male. Well, and they would not be in the part of the jail where the females are housed. Where this sewage incident occurred was in the main holding cell up front. So that's where the sewage, and that's where female and male inmates are housed. It's not the male section of the jail. It's not the female section. It's a joint section of the jail. And then also the medical department obviously houses both male and female inmates. So it's not that this occurred somewhere in the male portion of the jail where only male guards would be at. So the holding cell situation too is a common holding cell for both genders? Yes. Well, your guy in his affidavit said he's subject to deplorable conditions for a hundred days. So let's just assume that's really what we're talking about today versus the three to five days. Do you say it's sufficient for avoiding qualified immunity if you simply mention a guard one time in the beginning of the complaint for what they did in that first day of the hundred days, and then for the other 99 days in my hypothetical, that's only loosely based on your complaint here, the rest of the time you simply then refer to people as the guard or the guards. That's adequate then in your estimation to avoid dismissal based on qualified immunity? Not if this complaint was for the just generic deplorable conditions. Those conditions of confinement claims, those are tough, and qualified immunity is available easily in those claims. This is not just a, oh, wow, the conditions of my jail cell were bad or nasty. This was there was excrement covering this individual, and then the deputies actually performed an action by not removing him from the cell. They kept him there. They cursed at him. They laughed at him. They kept him in the cell. Then they moved him, and they continued to not give him a shower, not provide him with the basic necessities of cleanliness. And now you've actually named these five or six folks in connection with those two actions. I get that. But then you don't name them in connection with the remaining four days, 23 and a half hours. So it's enough to have said what they did in the inception to avoid any qualified immunity defense for the remaining four plus days. That's your position? And my argument would be that when guard is mentioned in the complaint, these are the guards we're talking about. The names, they're not named every time. Instead of using guards, I guess in the future, their specific names should be laid out every time the word guards is used. I thought from the factual allegations in the complaint... But in as much as the complaint includes guards no longer present in the case, doesn't it? Well, basically the only guard no longer present in the case is Douglas Hahn, who's the medical... He's the only one out. I believe there was... Well, Kahn isn't even a guard. Kahn's a doctor. You've got Eddington, for example. He's a corporal. You've got Rettig. They're corrections officials as opposed to doctors. Yes, Your Honor. So maybe they're what you meant by the guards, but they're out. They're out because of the supervisory capacity only. They were not mentioned as the guards who were actually present in the case. The guards who saw my client in the cell, the guards who left him in the cell, the guards that incursed at him in that cell, the guards that removed him to another cell, the guards that then transferred him to the medical department of the jail, the guards that would see him on a daily basis and not provide him any of his requests for showers or cleanliness or anything. Those are the guards that I'm talking about through the complaint. All six of them? Yes. The complaint doesn't... I guess it really doesn't lay out that they encountered him and his pleas for a shower in the medical center. So there's a limit to what courts will assume in a qualified immunity case. And I would understand that and certainly... What's your best argument for this court doing so in the face of this vague complaint? I think reading the complaint as a whole, when the guards are included, when guards are mentioned in the medical department, those are simply the same guards. And I would still argue that even if we throw out these two to three days where he's at the medical department, there's still a strong constitutional violation here from simply keeping my client in the cell and performing an action, an act of keeping him there. Not just him being in poor conditions, but actually sewage rising two to three inches in the cell and then moving him to another cell without offering him a chance to clean himself. Well, let's talk about the first two steps before he gets to the medical center. You attach a temporal period for the first act, the 25 minutes. Then it says he's transferred to another cell where apparently he gets a change in clothing. He had to get a new smock because he took off his smock to slide the excrement... So how long was he exposed to these unsanitary conditions in the... Is it right to say a holding cell? Yes, in that front holding area. How long was he in the second cell? In the second cell it was a matter of hours. A matter of hours? Until he was transferred to the medical... So what does that mean? Is that two hours, three hours, somewhere in that range? Yes, Your Honor. Okay. Do you have a case that says that there's a constitutional violation because guards taunt somebody? No, Your Honor. So we can ignore that. So do you have a case that says there's a constitutional violation if somebody is exposed to unsanitary conditions for 25 minutes? No, Your Honor. Do you have a case that says somebody... there's a constitutional violation if somebody's exposed to sanitary conditions with a new smock for a couple hours? No. So what I'm getting at, just to try to figure this out, is I sort of get under the hitching post case where somebody could make an argument that being covered with feces for three to five days in the medical unit, that's a problem. I don't think you have to have a case for that. But if you don't have a case as to what happened in the cell initially and then in connection with where they stuck him before they sent him to the medical center, what do we look to then to say that the law was clearly established? I think you have to look at both of those actions combined. Which actions? The taunting by the guards and the deplorable conditions of the cell. Those aren't two separate issues. In this case, those both happened at the same time. There's not a case where there's deplorable conditions and then guards decide to purposely leave the inmate in those conditions. And that's what happened here. In the deplorable condition cases, What does the taunting add to the unconstitutionality of this? Well, the taunting adds to the fact that, number one, the guards had knowledge of what was going on in that cell. That this was not just something that happened. This was something that happened and the guards were made immediately aware of it and they chose, they made the choice to keep my client The taunting supports prolonging it. The taunting goes to the subjective component of deliberate indifference. It doesn't establish a separate constitutional violation. Am I saying that correctly? That is correct. And we go to the mens rea of the guards. They had the mindset to keep my client in there, to taunt, and in effect, torture. That's a form of torture to purposely seize an individual where you could remedy the situation and not to fix it. And this was not just a dirty cell. This was actual sewage rising up the floor of the cell. Two to three inches of sewage covering ankles. My client was covered in it on his whole body because he was sleeping on the floor. They could see my client covered in the sewage. They could see him begging to be released. So it was a mens rea to purposely keep him in that cell to purposely launch curse words at him to taunt him. And simply, that's a form of torture that I think rises to the Eighth Amendment cruel and unusual punishment. If the toilet in the cell had overflowed and as soon as they heard about it, they removed him from the cell. He's still covered with excrement at that point. Would that be a constitutional violation? No. So how long does it have to be where somebody is left in that cell before you put him in another cell to then tip the balance to become unconstitutional? My argument would be once knowledge is established, once a guard or an individual who has the power to remedy the situation without they could have easily moved him to another cell. They did. They ended up doing that. You say they could have easily moved him to another cell. We don't have any idea, do we, whether it took those two hours that you mentioned in order to get people out of a cell to have a cell available to put him in. We don't even know there was a cell available, do we? After the 25 minutes, they did move him to the other holding cell in the area. So we do know that cell was available. We know it was available 25 minutes later. We don't know if it's available as the sewage is overflowing, right? That's correct. I would still submit that a two to three inch sewage waste in a cell is an emergency type situation where they need to remove those individuals from that cell and if they need to shackle them while they're getting a new cell ready, fine. But to leave him in there to suffer is a classic constitutional violation. There's no case that is exactly on point to this. We have cases where there's taunting. We have cases where there's dirty cells. But what we don't have is this, where the taunting provides the knowledge of what happened. And that's what we have here. Thank you. Thank you, Counsel. Ms. Harris. Thank you. I would like to, if I may, direct the Court's attention to a couple other paragraphs in the Second Amendment complaint that support our position that when Appley wanted to make claims against the remaining defendants, he was able to do that. It's in paragraphs 58 and 59. He names all the defendants in paragraph 58. This is regarding his negligence claim against them. And then he says that they breached the duty by allowing plaintiffs to become covered with human excrement and sewage and by not timely removing him from said conditions. That's in paragraph 59. That is alleged against the appellants that are still in this case. But then when you look down into the negligence count against Douglas Hahn, who actually is the mental health liaison for the Sheriff's Office, when you look at paragraph 63, that's when the specific allegation is made that Douglas Hahn breached the duty by not allowing plaintiff access to soap or a shower while he was being treated in the medical section of the Franklin County Courthouse. You were reading 59, right? Initially I was, and then I moved to 63. But you didn't read 57, that he re-alleges and reincorporates all the allegations in paragraph 1 through 56. Right, and I will rely on my arguments already to the extent that when he wants to name people, he does. And I don't think that we should be put to the burden of guessing what facts he's alleging against which defendants if he just says the guards. I've actually, when he came up for his part of the argument, I actually heard a lot of facts I've never heard before and that are not in the record. They're not in the Second Amendment complaint. They're not in the affidavit that he swore out. For example? Well, just how being moved from here, they taunted him, they immediately knew that the toilet had overflowed. I know that he can see that he doesn't know if they could have been moved somewhere else, but we don't know that. I mean, basically what we know from the Second Amendment complaint is that the deputies laughed at him at some point after the toilet overflowed. Then they removed him from that cell after 25 minutes. Now the complaint, when you asked him, Judge McKeague, how long he was in the second cell, I believe you responded a matter of hours. The complaint says that he was in the second cell after he had been moved from the first cell where the toilet had overflowed. And when he was moved to the second cell and allowed to change his mug, he was there for one hour. Right now, as I stand here Judge Cook, I can't remember the other facts that I heard that aren't in the record, but I think if you read the Second Amendment complaint and the affidavit, maybe you will have heard some things also. Well, you're saying those things are added. I mean, the complaint is fairly specific about what happened before they removed him from the first cell. Paragraph 26 says that they were making noise. So it says all of these guards came to the door and they laughed at him and they cursed at him while the room continued to fill with sewage. So that sounds to me like it's clear enough that that happened right at the time the sewage starts to come up, these guards come to the door and they look in. Then it says later on that after they noticed the sewage was being pushed out from under the hall, then it's when they angrily removed him and his cellmates from the hole. And then the next paragraph tells us that that took place for 25 minutes. So we have to assume that that's true. So would knowing that the cell had sewage in it and intentionally leaving them there for 25 minutes before it starts to go under the door, and so that's why they removed them, would that constitute a constitutional violation? No, Your Honor. So how long can you leave somebody and crap on the floor of a cell? Well the cases that I've cited in the brief, I believe and again, this circuit I don't believe has squarely addressed this issue. Other circuits have. In the 8th Circuit, they found it as a matter of law not to be a constitutional violation where an inmate was left in the cell with sewage in the cell for four days. No constitutional violation. When constitutional violations occur, it's not when it's for a limited duration of time. It's not when it's just 24 hours. It's not when it's a few days. In that case again, it wasn't when it was four days. It's when you get into the 13 days, the longer period of time, the longer exposure to unsanitary conditions that courts have found a constitutional violation. So what do you think the remedy should be? Should we just reverse and say they're all entitled to qualified immunity or should we remand and ask the district court for more detailed findings as to the individual what each guard allegedly did? Well we would prefer that you reverse and find that the appellants are entitled to qualified immunity based on the facts as stated against them in the second amended complaint and Apley's affidavit. I just want to point out to you that the case that established was that a constitutional violation can occur even though there's not a specific case on point. The so-called hitching post case that guy was tethered to this hitching post for eight hours and that was a constitutional violation. It seems a little unlikely that you can be left in raw sewage for eight days and not be a constitutional violation. So I'd have to go back and read that case. I'm sorry. I must have spoken on that. I wonder if that individual there had been soaking in sewage? This is what I have. It's Smith v. Copeland. It's the Eighth Circuit. Defining no Eighth Amendment violation as a matter of law where the inmate was exposed to raw sewage from an overflow toilet in his cell for four days. Thank you counsel. Thank you. We will consider your case carefully.